IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **99-K-2462**

**DAWN DILLON,**

    Plaintiff,

v.

**TWIN PEAKS CHARTER ACADEMY and ST. VRAIN VALLEY SCHOOL DISTRICT NO. RE-1J,**

    Defendants.

_____

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
_____

KANE, J.

In this wrongful termination action, Plaintiff Dawn Dillon asserts several federal and state claims against Defendants Twin Peaks Charter Academy ("School") and St. Vrain School District Re-1J ("School District"). The School and the School District seek summary judgment as to all of Ms. Dillon's claims.

This case is closely connected to another wrongful termination action brought against the School and the School District by six teachers ("Teachers") who resigned from the School, as a group, in March 1999. (See Brammer-Hoelter v. Twin Peaks Charter Academy, Opinion and Order on Mots. for Summ. J., No. 99-K-1481 (D. Colo. March 28, 2006)). In addition to sharing a set of global facts, the cases were filed on the same day, by the same counsel, alleging the same claims, and arguing the same points of law. In Brammer-Hoelter, I granted the School's Motion for Summary Judgment on each

of Plaintiffs' claims, and concluded the District's Motion for Summary Judgment was therefore moot. See Brammer-Hoelter, slip op. at 16.

## II. Background

The School is a charter school in Longmont, Colorado, established in 1997 under the Colorado Charter School Act, C.R.S. § 22-10.5-101 et seq., and by contract with the St. Vrain Valley School District Re-1J. The School hired Ms. Dillon in August 1997 as a paraprofessional to be a teacher's aide for the School's sixth grade teachers. Unlike the Teachers in Brammer-Hoelter, Ms. Dillon never signed an employment contract with the School or the School District.

Near the end of the 1997-98 school year, Ms. Dillon applied to be a fourth grade teacher at the School for the following school year. Although she did not receive that job, Ms. Dillon was promoted in her capacity as a paraprofessional to a resource position for the 1998-99 school year.

During the 1998-99 school year, Ms. Dillon attended several off-campus meetings with the Brammer-Hoelter Teachers to discuss growing concerns about and general dissatisfaction with the School. In March 1999, the Teachers resigned en masse. Five days later, they attempted to rescind their resignations and the School's Board of Directors ("Board") refused, deciding instead to replace the Teachers. Shortly thereafter, the Board offered one of the vacated teaching positions to Ms. Dillon on an interim basis. (Dillon Aff. ¶ 10.) Because it was her preference that the Teachers retain their jobs, Ms. Dillon declined the promotion.

In May 1999, the School's interim administrator, Ivan Adams, made recommendations to the Board regarding the extension of teaching contracts and offers of paraprofessional jobs for the 1999-2000 school year. Mr. Adams recommended not extending Ms. Dillon an offer of employment for the 1999-2000 school year. Ms. Dillon's resource co-worker, David Hardy, received the same recommendation, and both resource positions were eliminated for the 1999-2000 school year. The Board accepted Mr. Adams's recommendations and neither Ms. Dillon nor Mr. Hardy were extended new offers of employment.

On June 4, 1999, Mr. Adams met with Ms. Dillon. At that meeting, according to Ms. Dillon, Mr. Adams informed her that "the Board [did] not want [her] to return in the fall . . . . [because] [she] supported the six teachers who left in March [1999]" and due to her "relationship with Dave Hardy." (Dillon Dep., pp. 45:11-12, 17-28, and 46:3.) While the School and the School District do not deny this allegation, they provide a copy of the performance evaluation that Mr. Adams submitted to the Board along with his adverse recommendation regarding future employment of Ms. Dillon. In that evaluation, Mr. Adams wrote:

> I am concerned that Dawn has been vocal and demonstrative against Board policies, practices, and the actual operations of the School. She has also taken issue with staff members that has helped to bring about a divisiveness among staff members. These actions are hurtful to the environment of a school.

(Defs.' Joint App. to Mots. for Summ. J. Ex. 1, Attach. G). Ms. Dillon then filed this lawsuit. She also filed a charge of sex discrimination with the Equal Employment Opportunity Commission, which she has since withdrawn. (Dillon Dep. 43:19-21.)

### III. Standard of Review

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Application of this standard requires evidence to be viewed and reasonable inferences to be drawn in the light most favorable to the nonmoving party. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).

The moving party bears the initial burden of showing both that there is an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. In so doing, the moving party need not negate the claims made by the nonmoving party. Id. If the moving party adequately supports its motion, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

### IV. Ms. Dillon's Claims

#### A. Federal Claims

Ms. Dillon's complaint involves both federal and state claims. Her federal claims, each brought under 42 U.S.C. § 1983, allege infringement of her First and Fourteenth Amendment rights under the United States Constitution to free speech, free association, procedural due process, and substantive due process. Each of these claims fails for the same reasons set forth in my Opinion and Order on Motions for Summary Judgment in Brammer-Hoelter.

**First Amendment Claim:** Ms. Dillon's did not suffer adverse employment action. She was not fired during the term of her employment, but rather was not offered another year of employment. Even assuming adverse employment action, however, Ms. Dillon's claim would fail because the type of speech and association she engaged in is not of public concern. Therefore, the School did not violate Ms. Dillon's rights to free speech or free association. See Brammer-Hoelter, slip op. at pp. 6-9.

**Fifth and Fourteenth Amendment Claims:** Because her term of employment had expired, Ms. Dillon did not have a protected property interest in continued employment. Hence, she was not terminated and was not entitled to a written explanation from the School explaining the Board's choice of action. The School, then, did not violate Ms. Dillon's right to procedural due process. Nor did the School impinge on Ms. Dillon's right to substantive due process. Because the School did not publish a false statement about Ms. Dillon that could have adversely affected her search for a future job, the circumstances surrounding the conclusion of her employment with the School did not encompass implicate her liberty interest. Id., slip op. at pp. 9-12.

**B. State Claims**

As to her state claims, Ms. Dillon contends the School and the School District violated her right under Colorado's state constitution to free speech, breached her employment contract, and should be estopped from denying such claims.

**Breach of Contract and Estoppel Claims:** Because Ms. Dillon's term of employment ran from school year to school year, the Board's decision not to rehire her was not subject to the terms of any express or implied employment contract.  Even assuming that the School's grievance policy formed the basis of an on-going employment contract, Ms. Dillon's breach of contract and estoppel claims would still fail.  The oral complaints that she lodged with staff or individual Board members were not of the formal kind that required the "processing" that Ms. Dillon now demands.  Hence, there was no breach of contract and there are no grounds on which Ms. Dillon can win estoppel.  See Brammer-Hoelter, slip op. at 12 - 16.

Based on the foregoing, the School's Motion for Summary Judgment is **GRANTED** in its entirety.

## V. The School District's Motion for Summary Judgment

The School District defends itself against Ms. Dillon's claims on the grounds that the School is not an agent or a subentity of the School District.  Hence, the School District argues, it is not liable for the School's actions on either a principal-agent or a *respondeat superior* basis.  Because summary judgment should be granted for the School, the School District's particular defense need not be addressed.  The School District's

Motion for Summary Judgment is therefore **DENIED** as **MOOT.**  Judgment shall enter against Plaintiff and in favor of Defendants on each of Plaintiff's claims against them.

While Plaintiff may not have prevailed on her claims, they were based on a colorable extension of existing law and not frivolous as filed.  Accordingly, and given the long delay in ruling on these motions, Defendants' Motion for Sanctions (Doc. 24) is **DENIED.**

The parties in both 99-1481 and 99-2462 shall bear their own costs, and my Opinion and Order in the latter case is hereby amended to reflect the same.

Dated March 28, 2006.

        **s/John L. Kane**
        SENIOR U.S. DISTRICT COURT JUDGE